UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| REGINA H.[1], | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.: 1:19-cv-04697-DML-TWP |
| | ) |
| ANDREW M. SAUL, | ) |
| Commissioner of the Social Security, | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

## Decision on Complaint for Judicial Review

Plaintiff Regina H. applied in June 2016 for Disability Insurance Benefits (DIB) and Supplemental Security Income disability benefits under Titles II and XVI, respectively, of the Social Security Act, alleging that she has been disabled since October 27, 2015. Her applications were denied initially on July 27, 2016, and on reconsideration on September 28, 2016. After a hearing held July 5, 2018, before administrative law judge Jody Hilger Odell, the ALJ issued her decision on October 16, 2018, that Regina was not disabled. The Appeals Council denied review on September 30, 2019, rendering the ALJ's decision for the Commissioner final. Regina timely filed this civil action under 42 U.S.C. § 405(g) for review of the Commissioner's decision.

---

[1] To protect privacy interests of claimants for Social Security benefits, the Southern District of Indiana has chosen to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions. The plaintiff will therefore be referred to by her first name.

Regina contends that the ALJ erred because (1) she did not appropriately evaluate her mental impairments and (2) the sedentary work restriction with a sit/stand option every ten minutes is not compatible with the jobs the ALJ found she can perform.

The court will first describe the legal framework for analyzing disability claims and the court's standard of review and then address Regina's assertions of error.

## Standard for Proving Disability

To prove disability, a claimant must show she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Regina is disabled if her impairments are of such severity that she is not able to perform the work she previously engaged in and, if based on her age, education, and work experience, she cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A). The Social Security Administration ("SSA") has implemented these statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability. 20 C.F.R. § 404.1520.

Step one asks if the claimant is currently engaged in substantial gainful activity; if she is, then she is not disabled. Step two asks whether the claimant's impairments, singly or in combination, are severe; if they are not, then she is not

disabled. A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The third step is an analysis of whether the claimant's impairments, either singly or in combination, meet or medically equal the criteria of any of the conditions in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. The Listing of Impairments includes medical conditions defined by criteria that the SSA has pre-determined are disabling, so that if a claimant meets all of the criteria for a listed impairment or presents medical findings equal in severity to the criteria for the most similar listed impairment, then the claimant is presumptively disabled and qualifies for benefits. *Sims v. Barnhart,* 309 F.3d 424, 428 (7th Cir. 2002).

If the claimant's impairments do not satisfy a listing, then her residual functional capacity (RFC) is determined for purposes of steps four and five. RFC is a claimant's ability to do work on a regular and continuing basis despite her impairment-related physical and mental limitations. 20 C.F.R. § 404.1545. At the fourth step, if the claimant has the RFC to perform her past relevant work, then she is not disabled. The fifth step asks whether there is work in the relevant economy that the claimant can perform, based on her age, work experience, and education (which are not considered at step four), and her RFC; if so, then she is not disabled.

The individual claiming disability bears the burden of proof at steps one through four. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). If the claimant meets that burden, then the Commissioner has the burden at step five to show that work exists in significant numbers in the national economy that the claimant can

3

perform, given her age, education, work experience, and functional capacity. 20 C.F.R. § 404.1560(c)(2); *Young v. Barnhart,* 362 F.3d 995, 1000 (7th Cir. 2004).

## Standard for Review of the ALJ's Decision

Judicial review of the Commissioner's (or ALJ's) factual findings is deferential. A court must affirm if no error of law occurred and if the findings are supported by substantial evidence. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). Substantial evidence means evidence that a reasonable person would accept as adequate to support a conclusion. *Id.* The standard demands more than a scintilla of evidentiary support, but it does not demand a preponderance of the evidence. *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001).

The ALJ is required to articulate a minimal, but legitimate, justification for her decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). The ALJ need not address every piece of evidence in her decision, but she cannot ignore a line of evidence that undermines the conclusions she made, and she must trace the path of her reasoning and connect the evidence to her findings and conclusions. *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012); *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000).

## Analysis

**I.     The ALJ determined at step five that Regina was not disabled.**

Regina was born in 1981, was 34 years old at the alleged onset of her disability in October 2015, and was 37 years old at the time the ALJ issued her decision. Her onset date corresponds to the last date she worked. Regina testified,

4

and her educational record supports, that she was in special education courses throughout high school (*see* R. 735), and her schedule included vocational training in food service in 10th through 12th grades. (*Id.*).  After high school, she began working in the bakery department at a grocery store, making donuts and bread on an overnight shift. She held that job for 15 years until the store closed.  (R. 39).  She then obtained a similar bakery department job at a Wal-Mart but held that job for only six months, until October 2015, because she suffered a hairline fracture to her elbow and was not able to continue to perform the necessary tasks.  (R. 40-41).  She also suffered from various other physical impairments that caused pain in her left shoulder and cervical and lumbar spines.

    At step one, the ALJ found that Regina had not engaged in substantial gainful activity since her alleged onset date.  At step two, she determined that Regina's severe impairments were degenerative disc disease with radiculopathy, left shoulder [injury], and obesity.  She also found that Regina suffered from a learning disability, depression, and attention deficit hyperactivity disorder, which were medically determinable, but found that these mental impairments were not severe. At step three, the ALJ determined that no listings were met or medically equaled.

    For the RFC, the ALJ decided that Regina is capable of sedentary work with certain postural restrictions but must have a sit/stand option while remaining at the work station: "[Regina] must be permitted to change positions up to every ten minutes, while remaining at the work station." (R. 23).  The RFC does not include any restrictions to account for Regina's learning disability, ADHD, or depression.

Based on the RFC and the testimony of a vocational expert, the ALJ found at step four that Regina could not perform her past work as a baker because that job requires light-level strength, beyond Regina's sedentary strength limitation. At step five and also based on the VE's testimony, the ALJ determined that Regina's vocational factors and RFC permit her to work in the following jobs available in significant numbers in the economy:  Circuit Board Assembler (DOT 726.684-110), Address Clerk (DOT 209.587-010), and Call-Out Operator (DOT 237.367-014). Accordingly, the ALJ concluded that Regina was not disabled.

## II. Regina asserts two errors by the ALJ.

Regina contends that the ALJ erred in two ways. First, she argues that the ALJ's analysis of the severity of her mental impairments and their effect on her functioning is not supported by substantial evidence, resulting in an erroneous failure to provide accommodations within the RFC.  Second, she contends that even if the RFC is supported by substantial evidence, the jobs the ALJ found that she can perform are not consistent with her restrictions to sedentary work with the ability to change positions every 10 minutes.  The court addresses these issues in turn below.

### A. The record demonstrates that Regina has a learning disability.

Regina's argument regarding the ALJ's failure to accommodate her mental impairments focuses on her learning disability.[2]  Regina testified that she has

---

[2]   In her reply brief, Regina conceded that she does not contend that the ALJ's failure to address whether her ADHD (apparently exhibited by anxiety) or

always suffered from a learning disability and was assigned to special education classes throughout high school. Her educational record corroborates that testimony. In her job function report, Regina stated that she used technical knowledge and skills "with help," could write a cake order "with help," and that generally she "had a lot of help" at the job and that's why she was able to hold the job for so long. (R. 248-249). Regina underwent a mental status examination on July 25, 2016. The psychologist stated that Regina gave full effort. He assessed her level of intellectual functioning as questionable. She did not understand some of the mental testing instructions, had somewhat impaired remote memory and verbal comprehension, could not perform simple subtraction, and her "digit span was 4 digits forward and 0 digits backward," with no understanding about reciting digits backward. (R. 395). He concluded that "at best," Regina's intellectual functioning is at "the low end of the low average end," more likely in the borderline range, and possibly in the mildly intellectually disabled range. (R. 396). He offered to conduct an intelligence test. (*Id.*). None was performed.

### B. The ALJ's evaluation of Regina's learning disability is without substantial evidentiary support.

Regina argues that the ALJ erroneously found her learning disability to be non-severe and that that failure led her erroneously to omit accommodations in the RFC for the effects of that disability. As Regina acknowledges, an ALJ's error at step two is harmless in itself, but a non-severe impairment must still be evaluated

---

depression were severe impairments or required accommodation is a harmful error. (*See* Dkt. 15 at p. 2).

for purposes of determining whether an accommodation within the RFC is appropriate. *See Curvin v. Colvin,* 778 F.3d 645, 649 (7th Cir. 2015) (a favorable disability ruling can be made only at step three or at step five, and there is no legal error at step two where the ALJ makes "as favorable a determination as can be made" at that step by finding that the claimant has at least one severe medically-determinable impairment).

Here, the ALJ's discussion about Regina's learning disability is paltry, and she wholly failed to consider whether or the extent to which any accommodation was necessary. The ALJ evaluated Regina's three mental impairments—learning disability, ADHD, and depression—in combination when determining that none were severe impairments as measured by the B criteria. Those criteria are: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting and managing oneself. There are five possible ratings of the claimant's limitations in each area: none, mild, moderate, marked, and extreme. 20 C.F.R. § 416.920a(b), (c). She found that Regina had no more than mild limitations in each area.

The court agrees with Regina that the ALJ's analysis of Regina's limitations with concentrating, persisting, or maintaining pace ("CPP"), and with understanding, remembering, or applying information lack substantial evidentiary support. The ALJ decided a mild limitation in CPP was appropriate because the consultative psychologist stated that Regina's "thought processes were logical and sequential within the limits of her range of intellectual functioning." (R. 22).

8

Having a logical thought process but within a range of low intellectual functioning does not provide insight into whether Regina may have difficulties with concentrating, persisting, or maintaining pace.  The ALJ supported her decision that Regina has only mild limitations in understanding, remembering, and applying information by evidence that Regina was able to recall four digits forward during her mental status exam and the psychologist found that her recent memory was grossly intact.  (R. 21).  That finding omitted important contrary evidence.

As Regina testified, and the ALJ seemed to credit in other parts of her decision, she cannot follow instructions well and has problems paying attention.  As the psychologist reported, Regina suffers from "somewhat impaired" remote memory, could not perform some basic mental tasks, misunderstood some of the instructions for the mental status exam, and "struggled with some of the mental status items."  (R. 395-96).  The ALJ also did not mention Regina's educational history of special education classes, discuss a connection between Regina's occupational training in high school and her ability to have performed as a baker for years, address Regina's work report that she did her job only with help, or address the consultative psychologist conclusion that Regina's learning disability stemmed from low intellectual functioning, possibly even mild intellectual disability.

Had the ALJ addressed these factors, she may have concluded that Regina suffers more than mildly in these categories and thus that her learning disability was severe.  More importantly, however, the ALJ never evaluated any of Regina's mental impairments as part of the RFC determination.  Under Agency regulations,

9

an evaluation of whether a mental impairment is severe is an exercise separate from an evaluation whether a claimant has functional limitations stemming from even a non-severe impairment. *See* 20 C.F.R. 416.945(a)(2) ("We will consider all of your medically determinable impairments . . . including your medically determinable impairments that are not 'severe' . . . when we assess your residual functional capacity"); SSR 96-8p ("The adjudicator must remember that the limitations identified in the 'paragraph B' . . . criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 . . . . The mental RFC assessment used at steps 4 and 5 . . . requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings . . . .")

Thus, even if there were substantial evidentiary support for a conclusion that Regina's mental impairments were not severe, the ALJ still was required to provide some reasoned evaluation about whether any accommodation within the RFC was appropriate. The ALJ did not, however, further evaluate Regina's mental impairments in deciding upon an RFC.[3] The decision lacks any mention of Regina's mental impairments apart from that described in connection with the ALJ's evaluation of severity—which the court has addressed above. That is error: a lack of any accommodations for a mental impairment cannot rest solely on a finding that

---

[3] The ALJ's reference to findings by the state examining physicians about an appropriate RFC was limited to their analysis of Regina's physical functioning. (R. 26) (deciding that Regina was capable of only sedentary work and not light work as the state agency examiners had opined).

the mental impairment is not severe—especially where that assessment is not supported by substantial evidence. Reversal and remand are required because of this error.

### C. The other alleged error can be addressed on remand.

Regina also argues vocational expert's testimony about the jobs that can be performed by a person who is limited to sedentary work but required to change positions from sitting to standing and *vice versa* every 10 minutes is wholly illogical. Regina's counsel asked the VE whether "it would be generally tolerated" if a person needed a sit/stand option every 10 minutes. The VE answered that if the job is sedentary *and* the person remains at the workstation, then changing from sitting to standing "would be tolerated." (R. 52). The VE did not testify that the jobs she had identified in response to the ALJ's questions allow the work to be done either sitting or standing or with that frequency in changing positions.

While the court finds that Regina's argument is strong, it is not necessary to resolve this matter. The ALJ may assign a new RFC to Regina on remand, leading to a new evaluation about available jobs. A determination can then be made about whether those (new) jobs accommodate an in-flux workstation at all, including one where the worker goes from sitting to standing so frequently.

### Conclusion

For the foregoing reasons, the court REVERSES and REMANDS under sentence four of 42 U.S.C. § 405(g) the Commissioner's decision that Regina was not disabled.

So ORDERED.

Dated: March 19, 2021

Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record by email through the court's ECF system